**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JAMES LEE EARLY,

                Petitioner,

vs.                                Case Nos.:   3:13-cv-337-J-32JRK
                                                    3:10-cr-173-J-32JRK-1

UNITED STATES OF AMERICA,              3:10-cr-39-J-32JRK-1

                Respondent.

_____/

**ORDER**

      This case is before the Court on Petitioner James Lee Early's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, filed on March 25, 2013. (Doc. 1).[1] The government filed a response in opposition on July 29, 2013. (Doc. 6). Petitioner did not file a reply to the government's response. Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the petition.

**I.     Procedural History**

      Between December 22, 2009 and January 5, 2010, Petitioner robbed three banks in north-central and northeast Florida using a fake bomb, and attempted to rob a fourth. This last attempt did him in. Bank employees refused to let Petitioner into their building when they recognized him as the suspect from the previous bank

---

[1]     Citations to Petitioner's first criminal case file, <u>United States of America v. James Lee Early</u>, 3:10-cr-39-J-32JRK-1, are denoted as "1 Crim. Doc. ___." Citations to Petitioner's second criminal case file, 3:10-cr-173-J-32JRK-1, are denoted as "2 Crim. Doc. ___." Citations to Petitioner's civil § 2255 case file, 3:13-cv-337-J-32JRK, are denoted as "Doc. ____."

robberies.  Petitioner then tried to flee, but the police apprehended him after giving chase.  Then on February 10, 2010, a grand jury sitting in the Middle District of Florida indicted Petitioner on two counts of bank robbery by force, violence, and intimidation with an assault on bank employees, in violation of 18 U.S.C. §§ 2113(a) and (d) (Counts One and Two), one count of attempted bank robbery by force, violence, and intimidation, in violation of 18 U.S.C. § 2113(a) (Count Three), and two counts of threatening bodily injury or personal property, in violation of 18 U.S.C. § 844(e) (Counts Four and Five).  (1 Crim. Doc. 1).  On March 23, 2010, a grand jury sitting in the Northern District of Florida also indicted Petitioner on a separate count of bank robbery by force or intimidation.  (2 Crim. Doc. 1 at 3-4).  Pursuant to Fed. R. Crim. P. 20 and a court order, the latter case was transferred to the Middle District of Florida.  (2 Crim. Doc. 1 at 5-9).  On August 11, 2010, Petitioner entered pleas of guilty pursuant to a written plea agreement to Counts One and Two of the indictment in case number 3:10-cr-39-J-32JRK-1, as well as a plea of guilty to Count One of the indictment in the transferred case number 3:10-cr-173-J-32JRK-1.  (1 Crim. Doc. 32 at 1).  In exchange for Petitioner's guilty plea, the government dismissed the remaining counts.  (Id. at 3).  Following a plea colloquy, the magistrate judge prepared a report recommending that the Court accept Petitioner's guilty plea as freely and intelligently given.  (1 Crim. Doc. 33).  The Court accepted and adopted both the Report and Recommendation and the guilty plea.  (1 Crim. Doc. 38).

As part of Petitioner's plea agreement, the United States agreed to recommend that the Court sentence Petitioner to the low end of whatever the Court calculated to

be Petitioner's advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."). (1 Crim. Doc. 32 at 4). The United States, however, clarified that its recommendation was not binding on the Court, and that if the Court rejected the recommendation, neither the United States nor Petitioner could withdraw from the plea agreement. Id. at 4, 10. The plea agreement also stated that Petitioner's sentence could be as high as 75 years in prison given the statutory maximums. Id. at 2.

Petitioner's undisputed guidelines range was 78 to 97 months' imprisonment. (1 Crim. Doc. 45 at 6). However, because Petitioner had a substantial criminal history that included convictions for grand theft, battery on a law enforcement officer, armed burglary, armed robbery, and various drug offenses, among others, and because Petitioner had engaged in a spree of bank robberies during which he inflicted terror on his victims, the Court sentenced Petitioner to three concurrent terms of 210 months in prison. (1 Crim. Doc. 40; 1 Crim. Doc. 45 at 48-58). The Court explained that the upward variance was necessary to promote deterrence and respect for the law in light of Petitioner's high rate of recidivism, to fully account for Petitioner's criminal history, to fully account for Petitioner's crime spree in the instant case, and to protect society. (1 Crim. Doc. 45 at 48-58).

Although Petitioner waived the right to direct or collateral review of his sentence as part of the plea agreement, Petitioner was allowed to appeal his sentence under the terms of the agreement because the Court varied upward from the sentencing guidelines. (See 1 Crim. Doc. 32 at 11) (permitting Petitioner to appeal if

3

the Court imposed a sentence above the applicable guidelines range).   On appeal, Petitioner challenged the substantive reasonableness of the Court's 210 month sentence, and the Eleventh Circuit affirmed.   United States v. Early, 686 F.3d 1219 (11th Cir. 2012).   First, the court of appeals noted that while "the upward variance was substantial, it was still well below the maximum 900 months that he could have received under the statute."   Id. at 1222.   Second, the court explained

> [M]any of the § 3553(a) factors militate in favor of an upward variance in this case.   Early has shown that, for the past 36 years, he has been unable to conform his conduct to the requirements of law.   His criminal history is so extensive that he has been incarcerated virtually all of his adult life.   When he is out of prison, he commits more crimes – many of them very violent.   The upward variance is also supported by Early's disrespect for the law reflected in his recidivism; the need for deterrence; the need to protect society from him; and the need to promote respect for the law.

Id. at 1222-23.   The court of appeals also rejected Petitioner's arguments that the Court abused its discretion or committed a clear error in judgment in weighing the § 3553(a) sentencing factors.   Id. at 1223.   Thus, the Eleventh Circuit upheld Petitioner's sentence.   Id.

The Eleventh Circuit rendered its decision on July 11, 2012.   Petitioner did not request certiorari review from the Supreme Court.   Therefore, Petitioner's conviction and sentence became final on October 9, 2012, upon the expiration of the 90-day period for seeking certiorari review.   Kaufmann v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002).   Petitioner had one year from that date, or until October 9, 2013, to file a motion to vacate under 28 U.S.C. § 2255(f)(1).   Petitioner filed his Motion to Vacate on March 25, 2013, and is therefore timely.

## II.   Discussion

Petitioner requests that the Court vacate his guilty plea and conviction. Petitioner's sole claim is that he did not knowingly and freely plead guilty because his attorney misadvised him as to what sentence he would receive.  (Doc. 1 at 3-5).[2] Petitioner alleges that counsel assured him he would receive less than 10 years in prison if he pled guilty, but that he would receive at least 15 years in prison if he went to trial and lost.  Id. at 3.  Petitioner further alleges that had he known his sentencing exposure could have been 210 months, he would not have pled guilty but would have insisted on going to trial.  Id.  Thus, Petitioner argues he received constitutionally ineffective assistance of counsel, and the Court should vacate his guilty plea under Strickland v. Washington, 466 U.S. 668 (1984) and Hill v. Lockhart, 474 U.S. 52 (1985).[3]

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both that counsel's performance fell below an objective standard of reasonableness and that, as a result, he suffered prejudice sufficient to undermine confidence in the outcome of the proceeding.  Strickland, 466 U.S. at 687.  However, "counsel is strongly presumed to have rendered adequate assistance and made all

---

[2]      The limited waiver of collateral review that Petitioner executed pursuant to his plea agreement does not bar consideration of this claim.  Waivers of collateral review cannot preclude a Court from hearing a petitioner's claim that his guilty plea was unknowing or involuntary.  See Baird v. United States, 445 F. App'x 252, 254 (11th Cir. 2011) (per curiam) (noting that despite a sentence-appeal waiver, collateral attack through an ineffective assistance claim is permitted when "the movant challenges the knowing and voluntary nature of the plea.").  For its part, the United States also does not contend that Petitioner's claim is barred by a valid waiver of collateral review.

[3]      Petitioner indicates that he believes the undersigned was biased (Doc. 1 at 3-4), but he does not develop any claim based on that belief.  Petitioner's belief seems to be nothing more than an inference of bias due to the disqualification of two previous judges.  Because Petitioner does not support this claim with any concrete factual allegations, however, the Court need not address it.

significant decisions in the exercise of reasonable professional judgment." Id. at 690. The petitioner bears the burden of proof on both the "performance" prong and the "prejudice" prong, and he must prove both to prevail. Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001).

Strickland's two-prong test also applies where a petitioner claims that the ineffective assistance of counsel rendered his guilty plea unknowing or involuntary. Hill, 474 U.S. at 58. In the guilty plea context, a defendant's plea is rendered involuntary by counsel's deficient performance if counsel's plea advice was not "within the range of competence demanded of attorneys in criminal cases." Id. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). "[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.'" Hill, 474 U.S. at 56-57 (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)). To be entitled to collateral relief in cases where a guilty plea is challenged based on ineffective assistance of counsel, "a petitioner must 'prove serious derelictions on the part of counsel sufficient to show that [the] plea was not, after all, a knowing and intelligent act.' " Downs-Morgan v. United States, 765 F.2d 1534, 1539 (11th Cir. 1985). If a petitioner can show that counsel's plea advice was deficient, he must further demonstrate that such advice prejudiced him. The prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. "[I]n order to satisfy the 'prejudice' requirement, the defendant

must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.

Where counsel's advice or prediction concerning a defendant's prospective sentence turns out to be incorrect, courts will typically find that such advice, even assuming it was deficient, has not prejudiced the defendant if the court warned the defendant prior to pleading guilty of his maximum potential sentence. E.g., United States v. Wilson, 245 F. App'x 10, 12 (11th Cir. 2007) ("During the plea colloquy, the district court itself explained to Wilson – in detail – the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting Wilson's guilty plea. Thus, any failure on the part of Wilson's counsel to clearly explain the possible punishment was cured by the district court."); Gambrel v. United States, 2013 WL 3934205 at *11 (S.D. Ga. July 30, 2013) ("So long as the Rule 11 court correctly advises a defendant of the minimum and maximum penalties he faces as a result of pleading guilty, a petitioner fails to establish prejudice by alleging that counsel gave erroneous advice about the sentence he might receive or the possibility for enhancements under the Sentencing Guidelines."); see also United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007) (affirming denial of § 2255 claim that counsel was ineffective for failing to advise petitioner of "the potential for enhancement or upward departure" where such failure was "corrected by the written plea agreement and the detailed in-court plea colloquy, both of which accurately stated [petitioner's] potential sentence.").

Here, the record amply shows that Petitioner pled guilty knowingly and freely. The record further shows that Petitioner pled guilty after being informed in more than one way, by the Court and the government, if not also by his counsel, that the sentencing guidelines and the government's recommendation were not binding, that Petitioner faced up to 75 years (900 months) in prison, and that the Court's sentence could be different from the guidelines range or anything that counsel predicted.

Petitioner's written plea agreement informed Petitioner that his maximum potential sentence was 75 years in prison, a fine of $750,000, or both a fine and imprisonment, followed by a term of five years' supervised release. (1 Crim. Doc. 32 at 2). The agreement informed Petitioner that while the government would recommend a sentence at the low end of the applicable guidelines range, this recommendation did not bind the Court. Id. at 4, 10. The agreement stated that if the Court did not accept the government's recommendation, neither the government nor Petitioner could withdraw from the agreement. Id. at 4. Additionally, the agreement stated "[t]he defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office." Id. at 10. Finally, the agreement stated that Petitioner pled guilty because he was in fact guilty, and that Petitioner pled "freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force,

intimidation, or coercion of any kind." Id. at 12-13.  Petitioner initialed each page of the agreement to indicate his understanding and assent.  See id., generally.

These same warnings and assurances were repeated at Petitioner's plea hearing on August 11, 2010.  Petitioner assured the Court that he and his attorney had discussed the application of the sentencing guidelines before entering into the plea agreement.  (1 Crim. Doc. 56 at 15).  The Court warned Petitioner that it could not determine his guidelines range until the Probation Office had completed its presentence report.  Id. at 15-16.  Even then, the Court advised Petitioner that the sentencing guidelines did not bind the district judge, that the Court could vary upward or downward from the guidelines, and that the Court could impose any sentence up to the statutory maximum.  Id. at 16.  Furthermore, the Court specifically advised Petitioner that the sentence could be different from any estimate counsel had given him, and "[i]n fact, your sentence could be more severe than you expect.  If that happens, you will still be bound by your guilty pleas and will not have a right to withdraw them."  Id.  Petitioner, under oath, affirmed that he understood without question.  Id. at 17.  The Court explained that the maximum penalty Petitioner faced was 75 years in prison, $750,000 in fines, or both, as well as five years of supervised release.  Id. at 21-22.  Petitioner again stated that he understood.  Id. at 22.

Petitioner also affirmed that he read the plea agreement in its entirety, that he understood it, and that he had reviewed it with counsel.  Id. at 24.  When asked whether he understood that the United States' recommendation of a sentence at the low end of the guidelines range would not bind the Court, Petitioner responded, "Yes

sir, I do." <u>Id.</u> at 28.  Petitioner reassured the Court that his decision to plead guilty

was his own and not the product of threats, force, coercion, or intimidation.  <u>Id.</u> at 45.

Petitioner also assured the Court that his plea was not dependent on any promises

other than those contained in the plea agreement.  <u>Id.</u>  Specifically, the following

dialogue took place:

| THE COURT: | Are you relying on any agreement, promise, or understanding with anyone concerning what sentence will be imposed if you plead guilty, other than what's stated in the plea agreement? |
|---|---|
| THE DEFENDANT: | No, sir. |
| THE COURT: | At this time, do you know what sentence you will receive? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Has anyone promised you that you'll receive a light sentence or otherwise be rewarded by pleading guilty, other than what's stated in the plea agreement? |
| | (Defendant conferring with his attorney) |
| THE DEFENDANT: | No, sir. |

<u>Id.</u> at 45-46.  Counsel for the government and Petitioner told the Court that there

were no promises or understandings concerning the disposition of the case outside of

the plea agreement.  <u>Id.</u> at 46.  Petitioner informed the Court that he had sufficient

time to consult with counsel before pleading guilty, and that he was satisfied with his

representation.  <u>Id.</u> at 46-47.  The Court concluded that Petitioner's guilty plea was

"freely, voluntarily, knowingly, and intelligently made, and that [Petitioner has] had

the advice and counsel of a competent lawyer…" <u>Id.</u> at 48.  Petitioner agreed with this finding. <u>Id.</u> at 49.

Accordingly, the record shows that Petitioner pled guilty aware that the Court could have sentenced him to up to 75 years in prison.  Petitioner knew that his sentence could be more severe than his guidelines range or any estimate his attorney had given him.  Petitioner also told the Court under oath that he pled guilty without reliance on any promise of a light sentence.  Thus, the record refutes any contention that Petitioner's guilty plea was unknowing or involuntary, that Petitioner only pled guilty because he thought he was guaranteed a lighter sentence, or that Petitioner would not have pled guilty had he known he could be sentenced to 210 months (17.5 years) in prison.  Petitioner knew he could be sentenced to <u>75</u> years and still pled guilty.   Petitioner knew the sentencing guidelines and the government's recommendation would not bind the Court, yet he still pled guilty.  Thus, even if counsel misinformed Petitioner as to what sentence he would receive (an inquiry the Court need not undertake), the Court's abundant warnings regarding his maximum sentence, the fallibility of counsel's sentencing estimate, and the non-binding nature of both the sentencing guidelines and the government's recommendation cured any misinformation Petitioner may have received.  <u>See</u> <u>Wilson</u>, 245 F. App'x at 12.  He therefore has failed to show how he suffered prejudice under <u>Strickland</u> or <u>Hill</u>.  There is no reasonable probability that Petitioner would have pled differently were counsel's advice any different.[4]

---

[4]      While the Court disposes of this case on the ground that Petitioner has not shown prejudice, the Court does not imply that counsel improperly advised Petitioner that he would receive a light

Accordingly, it is hereby

**ORDERED:**

1. Petitioner James Lee Early's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. 1) is **DENIED**.

2. The Clerk shall enter judgment in favor of the United States and against James Lee Early, and close the file.

CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA
PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has not absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue…

---

sentence. To the contrary, the record of the sentencing hearing suggests otherwise. There, the Court notified Petitioner and his counsel that, while the Court had not prejudged the case, it had serious doubts about the appropriateness of a sentence within the guidelines range. See 1 Crim. Doc. 45 at 22-23. The Court advised Petitioner's counsel not to assume it was a given that the Court would issue a sentence within Petitioner's guidelines range, and based on that warning offered counsel that "we can put this off if that's what needs to happen." Id. at 22-23.

Notably, neither Petitioner nor counsel expressed surprise at the Court's warning, nor did either accept the Court's offer for additional time to consider Petitioner's options, whether that be continuing the sentencing hearing or moving to withdraw Petitioner's guilty plea. Indeed, counsel stated "over the course of my professional experience, I've learned never to make any assumptions about the outcomes of any of these proceedings. And to the extent – I guess my last sentencing appearance – my last appearance before this court for sentencing, if I had made any of those assumptions, may have forewarned me not to – that – not to do that." Id. at 23. Counsel then continued with his presentation. Petitioner expressed no objection.

Thus, the record reflects that Petitioner and counsel were unsurprised at the Court's warning that it might vary upward from a sentence within the guidelines range. Though Petitioner could have moved to withdraw his guilty plea under Fed. R. Crim. P. 11(d) (as the Court had not yet pronounced a sentence), or requested additional time to prepare for the sentencing hearing, he did not do so. Counsel's remarks also reflect that he was wary of making assumptions about sentencing. Accordingly, the record belies Petitioner's contention that counsel had promised him that he would receive a sentence under 10 years if he pled guilty, in addition to undermining Petitioner's contention that he specially relied on that advice in making his plea decision.

only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances.  Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 2nd day of April, 2015.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:
Counsel of record
Pro se party